2001 ND 135

STATE of North Dakota, Plaintiff and Appellee,

v.

Joseph KELLY, Defendant and Appellant.

No. 20000293.

Supreme Court of North Dakota.

July 20, 2001.

---

Thomas E. Merrick, Jamestown, ND, for defendant and appellant.

Leo A. Ryan, Assistant State's Attorney, Jamestown, ND, for plaintiff and appellee.

NEUMANN, Justice.

[¶ 1] Joseph Kelly appealed from the trial court's judgment of conviction entered

upon a jury verdict finding him guilty of assault. We affirm.

## I

[¶2] Joseph Kelly, an inmate at the James River Correctional Center, was involved in an altercation with a fellow inmate. He was removed from the general inmate population, and a disciplinary proceeding was conducted four days later. The disciplinary committee recommended thirty days of disciplinary detention with credit for time served, restitution to the state for medical costs associated with treating the victim inmate, and a referral to the state's attorney's office for possible criminal charges. The warden approved the committee's recommendations.

[¶3] A criminal complaint was filed charging Kelly with assault in violation of N.D.C.C. § 12.1–17–01.1(1), a class A misdemeanor. At a pretrial conference, Kelly entered a not guilty plea and raised the affirmative defense of once in jeopardy under N.D.C.C. § 29–16–01(3).

[¶4] Another inmate gave a written statement describing the altercation as witnessed by him. The inmate testified for the State at trial, and the State offered the inmate's written statement into evidence. Kelly objected to its admission under N.D.R.Ev. 801 on the grounds it was hearsay. The trial court overruled the objection and admitted the exhibit. At the close of the evidence, the court determined the prison disciplinary proceedings did not constitute jeopardy, as a matter of law. Thus, the court did not submit the issue of former jeopardy to the jury.

[¶5] The jury returned a guilty verdict. The trial court entered a judgment of conviction.

[¶6] On appeal, Kelly argues the trial court erred in refusing to submit the question of former jeopardy to the jury and in

allowing the unsworn written statement of a witness into evidence.

## II

[¶7] Kelly argues that whether he had previously been punished for the assault was a question of fact and was required to be decided by the jury. Under N.D.C.C. § 29–16–01(3), an issue of fact arises upon a plea of once in jeopardy. Issues of fact must be tried by a jury. N.D.C.C. § 29–16–02. Under Rule 31(e)(2), N.D.R.Crim. P., "When a defendant interposes the defense of having been formerly convicted or acquitted for the same offense or an offense necessarily included therein, or of having been once in jeopardy, and evidence thereof is given at trial, the jury, if it so finds, shall declare that fact in its verdict."

[¶8] The explanatory note following Rule 31 says subdivision (e) was added to aid the court in deciding factual issues. "A determination of factual issues in the specific instances provided in this subdivision is deemed to be within the province of the jury. Because it is the court that determines the issue of law, the scope of the jury is not exceeded." Rule 31, N.D.R.Crim.P., Explanatory Note. The rule allows evidence of double jeopardy to be presented to the trial court and, if an issue of fact is presented, then to the jury for its determination. *City of Fargo v. Hector*, 534 N.W.2d 821, 823 (N.D.1995). The rule requires the trial court to submit a special verdict form to the jury, but only if the double jeopardy issue includes a question of fact. *Id.*

[¶9] The trial court ruled, as a matter of law, double jeopardy does not apply here. We, therefore, review the legal merits of Kelly's double jeopardy claim. *See id.*

[¶ 10] Kelly asserts his conviction, following the prison disciplinary proceedings based on the same conduct, violates the double jeopardy clause.

[¶ 11] The double jeopardy clause, found in the Fifth Amendment of the United States Constitution, protects against successive prosecutions and punishments for the same criminal offense. *State v. Foley*, 2000 ND 91, ¶ 6, 610 N.W.2d 49. Our state constitution also commands protection against double jeopardy. N.D. Const. art. I, § 12. We use the same interpretation of punishment for purposes of double jeopardy analysis under North Dakota statutory and constitutional law and federal constitutional law. *State v. Jacobson*, 545 N.W.2d 152, 153 (N.D.1996). The double jeopardy clause protects against three types of violations: prosecuting a defendant again for the same conduct following an acquittal; prosecuting a defendant for the same crime after conviction; and subjecting a defendant to multiple criminal punishments for the same conduct. *State v. Foster*, 484 N.W.2d 113, 115 (N.D.1992). Kelly argues the criminal charge against him involved the third type of double jeopardy violation.

[¶ 12] In *State v. Zimmerman*, 539 N.W.2d 49, 55–56 (N.D.1995), we stated a remedial administrative sanction, as opposed to a punitive or deterrent one, does not constitute a basis for a double jeopardy claim. *Zimmerman* involved a criminal prosecution for driving under the influence, following an administrative proceeding to suspend Zimmerman's driver's license. *Id.* at 50. In *Zimmerman*, we concluded that while "defendants may view the outcomes of both the criminal and administrative proceedings as punishments for the same offense . . . ., the criminal and administrative proceedings do not constitute double jeopardy because the administrative action serves the remedial goal of

protecting the public from impaired drivers, and the suspension of the license is not greatly disproportionate to the remedial goal." *Id.*

[¶ 13] Thus, we must determine whether the proceedings against Kelly at the James River Correctional Center were criminal or civil in nature. When administrative and criminal proceedings involve the same conduct, the issue is whether the administrative proceeding is deemed a criminal or civil proceeding for double jeopardy purposes. *State v. Stewart*, 1999 ND 154, ¶ 13, 598 N.W.2d 773 (citing *Hudson v. United States*, 522 U.S. 93, 107, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)). This is initially a question of statutory construction, i.e., whether the Legislative Assembly intended the disciplinary control of inmates to be criminal or civil in nature. *Stewart*, 1999 ND 154, ¶ 14, 598 N.W.2d 773.

[¶ 14] Section 12–47–11, N.D.C.C., gives the charge, custody, and control of inmates to the warden. The warden is authorized to make rules and prescribe penalties for violations of the rules by the inmates. N.D.C.C. § 12–47–12. Kelly complains that while he was in detention, "he was denied access to recreation facilities, mail and phone, was segregated from other prisoners, and was under lights twenty-four hours a day." At oral argument, Kelly conceded, however, that the use of recreation facilities and the telephone, interaction with other prisoners, receiving mail, and having lights turned out during parts of the day are privileges. In *Zimmerman*, we stated:

> Revocation of a privilege is not ordinarily considered punishment. As the United States Supreme Court has observed, "revocation of a privilege voluntarily granted" is a type of remedial sanction "which is characteristically free

of the punitive criminal element." *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922 (1938) (citing deportation and disbarment as examples).

539 N.W.2d at 52–53. Thus, inmate disciplinary proceedings and the resulting consequences are civil in nature.

[¶ 15] Kelly argues the statutory scheme is so punitive in purpose and effect as to transform what was intended as a civil remedy into a criminal penalty.

■ [¶ 16] Even in those cases in which the legislature indicates an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect that it transforms what was clearly intended as a civil remedy into a criminal penalty. *Stewart,* 1999 ND 154, ¶ 14, 598 N.W.2d 773. In making this determination, the factors listed in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), usually provide useful guideposts. *Stewart,* at ¶ 14. These factors include whether: (1) the sanction involves an affirmative disability or restraint; (2) it has historically been regarded as a punishment; (3) it comes into play only on a finding of *scienter;* (4) its operation will promote the traditional aims of punishment—retribution and deterrence; (5) the behavior to which it applies is already a crime; (6) an alternative purpose to which it may rationally be connected is assignable for it; and (7) it appears excessive in relation to the alternative purpose assigned. *Id.* at ¶ 14.

■ [¶ 17] However, the *Kennedy* factors are merely guideposts and are not necessarily dispositive. *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). We agree with the court in *United States v. Mayes,* 158 F.3d 1215, 1224 (11th Cir.1998) that the *Kenne-*

*dy* factors merit less significance in cases arising in a prison context. The court in *Mayes* stated:

In this unique setting, we must take into account the fact that a prison's remedial and punitive interests are inextricably related. As the Second Circuit observed, "Punitive interests and remedial interests ... are nowhere so tightly intertwined as in the prison setting, where the government's remedial interest is to maintain order and to prevent violent altercations among a population of criminals" and where "remedial concerns require 'punishing' individuals for violent or other disruptive conduct." *United States v. Hernandez–Fundora,* 58 F.3d 802, 806, 807 (2d. Cir.1995).

*Mayes,* 158 F.3d at 1224.

■ [¶ 18] The judgments of prison authorities in determining what is necessary to preserve order and discipline merit considerable deference, and we refrain from hindering institutional administration. We find the rationale of the court in *United States v. Newby,* 11 F.3d 1143, 1146 (3d Cir.1993) persuasive:

We do not believe that the Double Jeopardy Clause was ever intended to inhibit prison discipline.... If a prison disciplinary sanction bars subsequent criminal prosecution, the prison authorities will be forced to choose between instituting a disciplinary proceeding or awaiting a criminal prosecution. The process of conducting a criminal investigation and prosecution may take considerable time. The difficulties and delay that a criminal prosecution entails would leave the prisoners who violated the prison rules without a prompt resolution of charges and hinder prison administration and discipline.

■ [¶ 19] We conclude the statutes and regulations authorizing the prison disciplinary sanctions imposed against Kelly

are not so punitive as to override the intent to create remedial administrative penalties for inmate misconduct.

### III

[¶ 20] Kelly argues the trial court erred in admitting the unsworn written statement of the inmate who witnessed the altercation into evidence. Kelly asserted both to the trial court and on appeal that the unsworn written statement is hearsay.

[¶ 21] A trial court has broad discretion over evidentiary matters, and we will not overturn a trial court's decision to admit or exclude evidence unless the court abuses that discretion. *State v. Erickstad,* 2000 ND 202, ¶ 34, 620 N.W.2d 136. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or capricious manner or when it misinterprets or misapplies the law. *Id.* at ¶ 34.

[¶ 22] Generally, hearsay evidence is inadmissible. N.D.R.Ev. 802. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.D.R.Ev. 801(c). A statement that is not offered to prove the truth of the matter asserted is not hearsay. *State v. Carlson,* 1997 ND 7, ¶ 6, 559 N.W.2d 802.

[¶ 23] A prior inconsistent statement may be used to impeach a witness's testimony. N.D.R.Ev. 613; *State v. Burke,* 2000 ND 25, ¶ 30, 606 N.W.2d 108. However, a prior inconsistent statement may not be used substantively in a criminal case as direct evidence of the facts contained in the statement unless the prior statement was made under oath. N.D.R.Ev. 801(d)(1)(I); *State v. Demery,* 331 N.W.2d 7, 12–13 (N.D.1983).

[¶ 24] In its brief, the State concedes the statement should not have been admitted for substantive purposes. At oral argument, the State asserted the statement was offered not as direct evidence, but to show the witness's reluctance to testify.

[¶ 25] Arguably, the witness's trial testimony was inconsistent with his written statement. However, at trial, the prosecution did not attempt to impeach the witness with his statement. In fact, during the examination of the witness after the court admitted the statement into evidence, the prosecution failed to mention the statement. Likewise, the prosecution did not mention the statement in its closing statement. Thus, the record does not support that the statement was admissible under either N.D.R.Ev. 613 or N.D.R.Ev. 801(d)(1)(I). Accordingly, the trial court erred in admitting the statement into evidence.

[¶ 26] When a trial court errs in admitting evidence, we must then decide whether the error was so prejudicial that a defendant's substantial rights were affected and a different decision would have resulted without the error. *City of Fargo v. Erickson,* 1999 ND 145, ¶ 13, 598 N.W.2d 787. Under N.D.R.Crim.P. 52(a), "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *See, e.g., State v. Messner,* 1998 ND 151, ¶ 24, 583 N.W.2d 109 (noting erroneously admitted evidence that is cumulative to other properly admitted evidence is harmless error because it is not prejudicial and does not affect the substantial rights of a party). The note to N.D.R.Crim.P. 52 explains: "To determine whether error affecting substantial rights of the defendant has been committed, the entire record must be considered and the probable effect of the error determined in the light of all the evidence." Erroneously admitted evidence that is cumulative to other properly admitted evidence is not

prejudicial, does not affect substantial rights of the parties, and accordingly, is harmless error. *State v. Leinen*, 1999 ND 138, ¶ 17, 598 N.W.2d 102.

[¶ 27] The written statement of the witness was cumulative to other more direct evidence offered at trial. The victim testified that Kelly hit and kicked him. Other witnesses testified to seeing Kelly hit and kick the victim. Kelly himself testified he hit and kicked the victim. Several witnesses, including a doctor and a nurse, testified as to the extent of the victim's injuries. The victim testified about Kelly's temper and reputation. Thus, the substance of the written statement was cumulative to other testimony, and the erroneous admission of the statement was harmless error.

IV

[¶ 28] Kelly also argued that admission of an out-of-court statement without limiting instructions can be reversible error, the statement contained inadmissible opinion evidence, and the statement contained improper character evidence.

[¶ 29] There is no indication in the record that Kelly requested a limiting instruction. Kelly did not object to the statement under N.D.R.Ev. 602, relating to opinion evidence. Nor did Kelly object to the statement under N.D.R.Ev. 405, relating to character evidence. We do not consider arguments raised for the first time on appeal. *State v. Torgerson*, 2000 ND 105, ¶ 6, 611 N.W.2d 182.

V

[¶ 30] The trial court did not err in determining, as a matter of law, that the prison disciplinary proceedings did not constitute former jeopardy and in refusing to submit the former jeopardy issue to the jury. Although the trial court erred in admitting an unsworn written statement into evidence, the error was harmless. We affirm.

[¶ 31] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.