2003 ND 184

STATE of North Dakota, Plaintiff
and Appellee,

v.

Craig Randall BACKLUND, Defendant
and Appellant.

No. 20030044.

Supreme Court of North Dakota.

Dec. 2, 2003.

Jonathan R. Byers, Assistant Attorney General, Attorney General's Office, Bismarck, N.D., for amicus curiae.

Mark Rainer Boening (on brief), Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Robert G. Hoy, Ohnstad Twichell, West Fargo, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Craig Backlund appealed from a conviction entered upon a conditional guilty plea to the charge of luring a minor by computer in violation of N.D.C.C. § 12.1–20–05.1. We hold North Dakota had jurisdiction to prosecute Backlund, N.D.C.C. § 12.1–20–05.1 does not violate the Commerce Clause or the First Amendment, and the registration and notification provisions of N.D.C.C. § 12.1–32–15 do not violate procedural due process or double jeopardy. We affirm.

I

[¶ 2] In March 2002, Backlund, using the screen name "backdaddy0", participated in an Internet chatroom from his computer in Moorhead, Minnesota. He exchanged computer messages containing sexual references with an individual using the screen name "Fargobabe22." "Fargobabe22" identified herself as a 14–year–old girl, but was actually West Fargo police officer Al Schmidt. Backlund solicited "Fargobabe22" to engage in a sexual act and offered to pick her up and bring her home when they were done. Backlund arranged to meet "Fargobabe22" at a convenience store in West Fargo. The police observed Backlund at the designated convenience store. He was arrested in West Fargo and admitted he was the person who had been communicating with "Fargobabe22."

[¶ 3] Backlund was charged with luring a minor by computer in violation of N.D.C.C. § 12.1–20–05.1. The trial court rejected Backlund's pretrial jurisdictional and constitutional challenges to the prosecution, and he entered a conditional guilty plea under N.D.R.Crim.P. 11(a)(2). Backlund appealed from the resulting conviction.

II

[¶ 4] Our analysis of the issues raised by Backlund requires a brief description of the Internet, which:

is a decentralized, global, and interactive communications medium that connects individuals and commercial, as well as, nonprofit and public interest groups. Users disseminate and maintain dialogues about a wide range of information, in the form of text, images, sound, and video through cyberspace. The content of the disseminated information is wide-ranging and includes academic essays, art, music, humor, literature, medi-

cal information, and sexually explicit material. The Internet connects millions of residents from over 150 countries through individual computers as well as massive networks. Chat rooms, online discussion groups, newsgroups, and the World Wide Web are just some of the Internet methods by which information is exchanged. Users are frequently anonymous, which allows for free exchange of information and ideas. Messages are sent to an electronic address, rather than a geographic address and users frequently have no idea in what country or state a message originates or terminates. Similarly, it is not always technologically possible for a user to determine the age of a user who is accessing the communications.

Annot., *Validity of State Statutes and Administrative Regulations Regulating Internet Communications Under Commerce Clause and First Amendment of Federal Constitution*, 98 A.L.R. 5th 167, 175, § 2[a] (2002).

[¶ 5] In 2001 N.D. Sess. Laws ch. 134, § 4, the North Dakota Legislature enacted N.D.C.C. § 12.1–20–05.1, which provides:

An adult is guilty of luring minors by computer when:

1. The adult knows the character and content of a communication that, in whole or in part, implicitly or explicitly discusses or depicts actual or simulated nudity, sexual acts, sexual contact, sadomasochistic abuse, or other sexual performances and uses any computer communication system that allows the input, output, examination, or transfer of computer data or computer programs from one computer to another to initiate or engage in such communication with a person the adult believes to be a minor; and

2. By means of that communication the adult importunes, invites, or induces a person the adult believes to be a minor to engage in sexual acts or to have sexual contact with the adult, or to engage in a sexual performance, obscene sexual performance, or sexual conduct for the adult's benefit, satisfaction, lust, passions, or sexual desires.

3. A violation of this section is a class A misdemeanor, but if the adult is twenty-two years of age or older or the adult reasonably believes the minor is under the age of fifteen, violation of this section is a class C felony.

As originally introduced, N.D.C.C. § 12.1–20–05.1 proscribed luring "a minor," but was amended during the legislative process to criminalize luring "a person the adult believes to be a minor" to deal with situations where minors misrepresent their age to adults engaged in Internet solicitation of sexual acts. *Hearing on S.B.2035 Before Senate Judiciary Committee*, 57th N.D. Legis. Sess. (Jan. 16, 2001) (oral testimony of Ladd Erickson, Assistant Morton County State's Attorney).

[¶ 6] Under N.D.C.C. § 12.1–20–05.1, an adult is guilty of luring a minor by computer when (1) the adult knows the character and content of a communication that explicitly or implicitly discusses or depicts actual or simulated nudity, sexual acts, sexual contact, sadomasochistic abuse, or other sexual performances, 2) the adult uses any computer communication system to initiate or engage in such communication with a person the adult believes to be a minor, and (3) the adult's communication importunes, invites, or induces the person the adult believes to be a minor to engage in sexual acts or to have sexual contact with the adult, or to engage in a sexual performance or sexual conduct

for the adult's benefit, satisfaction, lust, passions, or sexual desires. Section 12.1–20–05.1, N.D.C.C. requires the adult to "know" the character and content of the communication that explicitly or implicitly discusses or depicts actual or simulated nudity, sexual acts, or sexual contact, but does not explicitly describe the degree of culpability necessary for the adult's use of the computer system to engage in the communication, or for the adult's importuning, inviting, or inducing the person the adult believes to be a minor. Under N.D.C.C. § 12.1–02–02(2), if a statute defining a crime does not specify any culpability and does not provide explicitly that a person may be guilty without culpability, the required culpability is "willfully," which is defined in N.D.C.C. § 12.1–02–02(1)(e) as engaging in conduct intentionally, knowingly, or recklessly. Section 12.1–20–05.1, N.D.C.C., does not explicitly specify it is a strict liability offense, and the requisite culpability for the conduct proscribed by that statute is "willfully." *See State v. Knowels*, 2002 ND 62, ¶¶ 12–13, 643 N.W.2d 20.

■ [¶ 7] We therefore construe N.D.C.C. § 12.1–20–05.1 to provide that an adult is guilty of luring a minor by computer when (1) the adult knows the character and content of a communication that implicitly or explicitly discusses or depicts actual or simulated nudity, sexual acts, sexual contact, sadomasochistic abuse, or other sexual performances, (2) the adult willfully uses any computer communication system to initiate or engage in such communication with a person the adult believes to be a minor, and (3) by means of that communication, the adult willfully importunes, invites, or induces the person the adult believes to be a minor to engage in sexual acts or have sexual contact with the adult, or to engage in a sexual performance, obscene sexual performance, or sexu-

al conduct for the adult's benefit, satisfaction, lust, passions, or sexual desires. We address the issues raised by Backlund under that interpretation of N.D.C.C. § 12.1–20–05.1.

### III

■ [¶ 8] Backlund argues North Dakota lacks jurisdiction to prosecute him under N.D.C.C. § 12.1–20–05.1 because he committed the offense at his computer in Moorhead, Minnesota. Backlund argues North Dakota cannot criminalize lawful Minnesota speech simply because one of the innumerable people able to access the Internet happens to be a North Dakota police officer. He argues the language of N.D.C.C. § 12.1–20–05.1 indicates a crime is committed, if at all, at the keyboard and no further overt acts are required by the statute.

[¶ 9] In *People v. Ruppenthal*, 331 Ill. App.3d 916, 265 Ill.Dec. 43, 771 N.E.2d 1002, 1007–08 (2002), *cert. denied*, — U.S. ——, 124 S.Ct. 62, 157 L.Ed.2d 27 (2003), the Appellate Court of Illinois considered a comparable jurisdictional issue in a similar factual context under Illinois' luring statute. There, a defendant in California used a computer to solicit sexual contact with "Stacy," an adult police officer in Illinois posing as a 14–year–old female. *Id.* at 1003–04. The defendant was arrested when he traveled to Illinois to meet "Stacy." *Id.* at 1004. The defendant argued no part of the crime occurred in Illinois because he uttered the words of solicitation in California. *Id.* at 1007. The court disagreed:

> Although the offense of solicitation is complete upon the utterance of words of solicitation, no solicitation can occur unless the offending words are heard by another person. Defendant attempted to solicit sexual activity with a girl under the age of 17 living in Illinois, and he

traveled to Illinois with the admitted intent of engaging in the sexual acts. The result of defendant's solicitation brought him within Illinois' borders. As with the telephone harassment discussed in [*People* v.]*Baker* [205 Ill. Dec. 335, 643 N.E.2d 286 (1994)], Illinois has a valid public interest in protecting minor children in this state from individuals who seek underage sexual partners using the Internet. We find that Illinois had proper jurisdiction over this case. *Id.* at 1008.

[¶ 10] Under N.D.R.Crim. P. 18, criminal prosecutions shall be heard in the county in which the offense was committed, except as otherwise provided by law or the rules of criminal procedure. Under N.D.C.C. § 29–03–01.1, a person who, while outside this state, solicits criminal action within this state and is thereafter found in this state may be prosecuted under North Dakota law.

[¶ 11] Although Backlund argues N.D.C.C. § 29–03–01.1 clearly does not apply to the conduct which N.D.C.C. § 12.1–20–05.1 proscribes, Backlund pled guilty to "importun[ing], invit[ing], or induc[ing]" a person he believed to be a minor to engage in a sexual act with him. Backlund importuned, invited, or induced "Fargobabe22" while he was at his computer in Moorhead, and "Fargobabe22" received the communication at a computer in West Fargo. *Cf. Wagner v. Miskin*, 2003 ND 69, ¶ 20, 660 N.W.2d 593 (recognizing North Dakota courts have civil jurisdiction over defendant who directly targeted North Dakota and North Dakota resident with defendant's website); *see also* N.D.C.C. § 29–03–21 ("In those cases in which the sending of a letter is made an offense, the offense is deemed completed when the letter is deposited in any post office or postal receptacle, or delivered to any person with intent that it be forwarded. The person

sending the letter may be tried in any county in which the letter is so deposited or delivered, or in the county in which it is received by the addressee."). Backlund offered to pick up "Fargobabe22" at a designated convenience store in West Fargo. The police observed Backlund at the designated convenience store, and he was thereafter arrested in West Fargo. Under these circumstances, we conclude the language of N.D.C.C. § 29–03–01.1 applies to Backlund, and he is subject to prosecution in North Dakota.

### IV

■ [¶ 12] Relying on *American Libraries Ass'n v. Pataki*, 969 F.Supp. 160 (S.D.N.Y.1997), Backlund argues the worldwide application of N.D.C.C. § 12.1–20–05.1 substantially impacts interstate commerce in violation of the "negative" or "dormant" aspect of the Commerce Clause.

■ [¶ 13] The Commerce Clause, U.S. Const. art. I, § 8, cl. 3, grants Congress the power "[t]o regulate interstate commerce ... among the several States" to prevent the economic balkanization that had plagued the colonies and the states under the Articles of Confederation. *D.D.I., Inc. v. State ex rel. Clayburgh*, 2003 ND 32, ¶ 4, 657 N.W.2d 228. The Commerce Clause's affirmative grant of authority to Congress has a "negative" or "dormant" aspect, which prohibits a state from enacting legislation that unduly burdens interstate commerce. *Id.*

[¶ 14] In *Pataki*, 969 F.Supp. at 163, 183–84, a federal trial court enjoined enforcement of a New York statute, N.Y. Penal Law § 235.21, making it a crime for an individual to intentionally use a computer to engage in a communication with a minor which depicted actual or simulated nudity, sexual conduct, or sadomasochistic abuse and which was harmful to the minor. In *Pataki* at 169, the court concluded the

statute violated the negative aspect of the Commerce Clause, because it unduly burdened interstate commerce in the traffic of goods, services, or ideas:

First, the Act represents an unconstitutional projection of New York law into conduct that occurs wholly outside New York. Second, the Act is invalid because although protecting children from indecent material is a legitimate and indisputably worthy subject of state legislation, the burdens on interstate commerce resulting from the Act clearly exceed any local benefit derived from it. Finally, the Internet is one of those areas of commerce that must be marked off as a national preserve to protect users from inconsistent legislation that, taken to its most extreme, could paralyze development of the Internet altogether. Thus, the Commerce Clause ordains that only Congress can legislate in this area, subject, of course, to whatever limitations other provisions of the Constitution (such as the First Amendment) may require.

*Pataki,* however, did not involve a challenge to N.Y. Penal Law § 235.22, a New York statute that prohibited adults from using the Internet to lure children into sexual contact. *Pataki,* at 179.

[¶ 15]   In *People v. Foley,* 94 N.Y.2d 668, 709 N.Y.S.2d 467, 731 N.E.2d 123, 132–133, *cert. denied,* 531 U.S. 875, 121 S.Ct. 181, 148 L.Ed.2d 124 (2000), the New York Court of Appeals distinguished *Pataki* and concluded New York's luring statute did not violate the Commerce Clause:

Penal Law § 235.22 does not discriminate against or burden interstate trade; it regulates the conduct of individuals who intend to use the Internet to endanger the welfare of children. Although Penal Law § 235.22 contains some of the same language as the provision in Penal Law § 235.21(3) struck down in [*Pa-*

*taki* ], the statute challenged here contains the additional "luring" prong. We are hard pressed to ascertain any legitimate commerce that is derived from the intentional transmission of sexually graphic images to minors for the purpose of luring them into sexual activity. Indeed, the conduct sought to be sanctioned by Penal Law § 235.22 is of the sort that deserves no "economic" protection (*see, New York v. Ferber, supra,* 458 U.S. 747, 761–762, 102 S.Ct. 3348, 73 L.Ed.2d 1113). Thus, we conclude that Penal Law § 235.22 is a valid exercise of the State's general police powers (*see Lewis v. BT Inv. Mgrs.,* 447 U.S. 27, 36, 100 S.Ct. 2009, 64 L.Ed.2d 702).

[¶ 16]   In *People v. Hsu,* 82 Cal.App.4th 976, 99 Cal.Rptr.2d 184, 190 (2000), the California Court of Appeals rejected a similar Commerce Clause challenge to California's luring statute:

Under the *Pike [v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) balancing] test, section 288.2, subdivision (b) does not violate the commerce clause. Statutes affecting public safety carry a strong presumption of validity (*Bibb v. Navajo Freight Lines* (1959) 359 U.S. 520, 524, 79 S.Ct. 962, 3 L.Ed.2d 1003), and the definition and enforcement of criminal laws lie primarily with states. (*United States v. Lopez* (1995) 514 U.S. 549, 561, fn. 3, 115 S.Ct. 1624, 131 L.Ed.2d 626.) States have a compelling interest in protecting minors from harm generally and certainly from being seduced to engage in sexual activities. (See *Sable Communications of Cal., Inc. v. FCC* (1989) 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (*Sable* ); *Globe Newspaper Co. v. Superior Court* (1982) 457 U.S. 596, 607, 102 S.Ct. 2613, 73 L.Ed.2d 248.) Conversely, it is difficult to conceive of any legitimate

commerce that would be burdened by penalizing the transmission of harmful sexual material to known minors in order to seduce them. To the extent section 288.2, subdivision (b) may affect interstate commerce, its effect is incidental at best and far outweighed by the state's abiding interest in preventing harm to minors.

[¶ 17] Section 12.1–20–05.1, N.D.C.C. includes both a dissemination prong in subsection (1) and a luring prong in subsection (2), and, in that respect, is similar to the statutes involved in *Foley* and *Hsu.* We agree with the statements in *Foley* and *Hsu* that it is difficult to ascertain any legitimate commerce that is derived from the willful transmission of explicit or implicit sexual communications to a person believed to be a minor in order to willfully lure that person into sexual activity. We conclude N.D.C.C. § 12.1–20–05.1 does not violate the Commerce Clause.

V

[¶ 18] Backlund argues N.D.C.C. § 12.1–20–05.1 violates the free speech provisions of the federal and state constitutions. Relying on *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) and *Reno v. ACLU,* 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), he argues N.D.C.C. § 12.1–20–05.1 is unconstitutionally overbroad as applied to this case, because there was no communication to, or luring of a minor, and his communications were to a "virtual minor," a West Fargo police officer posing as a minor. He argues N.D.C.C. § 12.1–20–05.1 is a content-based restriction on free speech which is not narrowly tailored to effectuate its legislative purpose.

[¶ 19] The First Amendment is applicable to the states through the Fourteenth Amendment, and precludes states from enacting laws "abridging the freedom of speech." *Bolinske v. North Dakota State Fair Ass'n,* 522 N.W.2d 426, 430 (N.D.1994). *See also* N.D. Const. art. I, § 4 (guaranteeing freedom of speech).

[¶ 20] In *Ashcroft,* 535 U.S. at 239, 122 S.Ct. 1389 the United States Supreme Court considered a First Amendment challenge to two provisions of the Child Pornography Prevention Act of 1996 ("CPPA"), which extended the federal prohibition against child pornography to include not only pornographic images using actual children, but also visual depictions that are, appear to be, or convey the impression they are minors engaged in sexual conduct. The Court recognized the prohibited images of what appeared to be minors engaged in sexual conduct were neither obscene under *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), nor child pornography produced by the depiction of real children under *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). *Ashcroft,* at 246–51, 122 S.Ct. 1389. The Court said the government may not suppress lawful speech as a means to suppress unlawful speech and recognized the CPPA prohibited speech that created no crime or victims by its production. *Compare Ashcroft,* at 250–51, 122 S.Ct. 1389, *with Ferber,* at 761, 102 S.Ct. 3348 (pornography depicting actual children can be proscribed even if not obscene because state has interest in protecting children exploited by the production process). The Court held both provisions of the CCPA were substantially overbroad and violated the First Amendment. *Ashcroft,* at 258, 122 S.Ct. 1389.

[¶ 21] In *Reno,* 521 U.S. at 859–60, 117 S.Ct. 2329, the Court considered two provisions of the Communications Decency Act of 1996, which prohibited knowingly transmitting obscene or indecent material to

recipients under the age of 18, and knowingly sending or displaying patently offensive messages to persons under 18. The Court concluded both provisions were content-based regulations of speech which lacked the precision required when a statute regulates the content of speech. *Reno,* at 874, 117 S.Ct. 2329 The Court said both provisions suppressed a large amount of speech that adults have a constitutional right to receive and to address to one another, and they were not narrowly tailored to achieve legitimate purposes. *Id.* at 874–79, 117 S.Ct. 2329. The Court held both provisions violated the First Amendment. *Id.* at 882, 117 S.Ct. 2329.

[¶ 22] Although both *Ashcroft* and *Reno* involved First Amendment challenges to statutes that prohibited the dissemination or production of certain materials, neither case involved challenges to statutes that prohibited speech used to lure a minor to engage in sexual acts. In *Foley,* 709 N.Y.S.2d 467, 731 N.E.2d at 127–32, the New York Court of Appeals considered a First Amendment challenge to New York's luring statute, N.Y. Penal Law § 235.22, which provided:

"A person is guilty of disseminating indecent material to minors in the first degree when:

"1. Knowing the character and content of the communication which, in whole or in part, depicts actual or simulated nudity, sexual conduct or sado-masochistic abuse, and which is harmful to minors, he intentionally uses any computer communication system allowing the input, output, examination or transfer, of computer data or computer programs from one computer to another, to initiate or engage in such communication with a person who is a minor, and

"2. By means of such communication he importunes, invites or induces a minor to engage in sexual intercourse, deviate sexual intercourse, or sexual contact with him, or to engage in a sexual performance, obscene sexual performance, or sexual conduct for his benefit.

[¶ 23] The New York Court of Appeals distinguished N.Y. Penal Law § 235.22 from the two provisions of the Communications Decency Act at issue in *Reno,* because the New York statute was not directed solely at the mere transmission of communications over the Internet and included an additional requirement for luring conduct, which the court concluded was distinguishable from pure speech. *Foley,* 709 N.Y.S.2d 467, 731 N.E.2d at 129. The court recognized New York's luring statute was "a preemptive strike against sexual abuse of children by creating criminal liability for *conduct* directed towards the ultimate acts of abuse." *Id.* (emphasis added).

[¶ 24] The court rejected the defendant's argument the statute affected constitutionally protected speech on the Internet because the statute did not require individuals to know they were communicating with a minor. *Foley,* 709 N.Y.S.2d 467, 731 N.E.2d at 129–30. The court construed the statute to mean a person violated the statute, if knowing the content of the communication, the person intended to use a computer system to initiate or engage in such communication with a minor and intended to importune, invite, or induce the minor to engage in sexual conduct. *Id.* at 130. The court concluded the legitimate reach of the statute outweighed any arguably impermissible applications, and the statute was not substantially overbroad. *Id.*

[¶ 25] The court also rejected the defendant's argument the statute was an unconstitutional content-based restriction, concluding the statute curtailed the use of speech in a way which did not merit First Amendment protection and was a carefully

tailored means of serving a compelling state interest. *Foley*, 709 N.Y.S.2d 467, 731 N.E.2d at 131–32. The court recognized freedom of speech does not extend to speech used as an integral part of conduct in violation of a valid criminal statute. *Id.* at 132 (quoting *Ferber*, 458 U.S. at 761–62).

[¶ 26] Other courts have considered comparable luring statutes and concluded the First Amendment does not protect speech used in conjunction with the conduct of child solicitation. *See United States v. Bailey*, 228 F.3d 637, 639 (6th Cir.2000) (distinguishing *Reno* and holding 18 U.S.C. § 2422(b) does not violate First Amendment because defendant does not have First Amendment right to attempt to entice minors to engage in illegal sexual acts); *United States v. Powell*, 1 F.Supp.2d 1419, 1422 (N.D.Ala.1998) (stating 18 U.S.C. § 2422(b) criminalizes use of interstate commerce to persuade, induce, and entice person under eighteen to engage in sexual act that is already illegal and recognizing Supreme Court's refusal to extend First Amendment protection to speech that is integral part of illicit behavior); *Hsu*, 99 Cal.Rptr.2d at 194 (distinguishing *Reno* and stating only chilling effect of California luring statute is on conduct of those who would use otherwise protected speech to seduce minors); *Ruppenthal*, 265 Ill.Dec. 43, 771 N.E.2d at 1005–06 (rejecting First Amendment challenge because speech that is integral part of unlawful conduct has no constitutional protection); *State v. Robins*, 253 Wis.2d 298, 646 N.W.2d 287, 297 (2002) (holding First Amendment does not protect child enticements, whether initiated over the Internet or otherwise).

[¶ 27] In *Powell*, 1 F.Supp.2d at 1422, the court explained:

The First Amendment guarantees the right to freedom of expression; however, the Supreme Court has stated, "[i]t rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498, 69 S.Ct. 684, 93 L.Ed. 834 (1949).

In *Bailey*, 228 F.3d at 639, the court upheld 18 U.S.C. § 2422(b), stating:

The statute only applies to those who "knowingly" persuade or entice, or attempt to persuade or entice, minors. Thus, it only affects those who intend to target minors: it does not punish those who inadvertently speak with minors or who, as in *Reno*, post messages for all internet users, either adults or children, to seek out and read at their discretion. Any limited or incidental effect on speech does not infringe on any constitutionally protected rights of adults. Put another way, the Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts.

[¶ 28] In *Ruppenthal*, 265 Ill.Dec. 43, 771 N.E.2d at 1005–07, in an analogous sting operation by an adult Illinois police officer posing as a child in Internet communications with a California adult, the Appellate Court of Illinois considered a First Amendment challenge to a statute proscribing indecent solicitation of a child. The Illinois statute provided that a person seventeen years of age or older committed the crime of indecent solicitation of a minor if the person, with the intent that the offense of predatory criminal sexual assault of a child be committed, knowingly solicited a child or one whom he or she believed to be a child to perform an act of sexual penetration or sexual conduct. *Id.* at 1004–05. The court rejected the defen-

dant's argument he committed no crime by soliciting an adult police officer, stating "[t]he fact that defendant's words were transmitted to an adult does not negate defendant's belief that he was speaking to a minor, which is the culpable act defined by the statute." *Id.* at 1005. In rejecting the defendant's First Amendment challenge to the luring statute, the court said:

It would be impossible for the act of solicitation to occur without the exchange of words between offender and victim, and defendant's "beliefs" and his discussions with children or those he believes to be children regarding sexual activity do not rise to the level of constitutionally protected speech. *See, e.g., City of Chicago v. Powell,* ... 315 Ill. App.3d 1136, 248 Ill.Dec. 799, 735 N.E.2d 119, 126–27 (2000); *People v. Bailey,* ... 167 Ill.2d 210, 212 Ill.Dec. 608, 657 N.E.2d 953, 961 (1995) (in stalking case, "[w]here speech is an integral part of unlawful conduct, it has no constitutional protection"); *People v. Williams,* ... 133 Ill.2d 449, 141 Ill.Dec. 444, 551 N.E.2d 631, 634 (1990) (in case involving child abduction statute, the State may "validly proscribe the luring or attempted luring of children into motor vehicles for criminal purposes, although that attempt may involve speech").

The *Williams* court further discussed the necessarily inchoate nature of the child abduction statute:

"[T]he luring or attempted luring of a child into an automobile for a criminal purpose is in no way protected by the first amendment.... Once a child is taken into a vehicle and whisked away by a person harboring a criminal motive, it becomes exceedingly difficult, if not impossible, for law enforcement personnel to intervene for the protection of the child. The State undoubtedly has broad powers to avert such

potentially dangerous situations." *Williams,* ... 141 Ill.Dec. 444, 551 N.E.2d at 634.

That principle also can be applied to the indecent solicitation statute. Furthermore, we reject defendant's protests that he was the victim of a Cook County sheriff's department "thought patrol" that polices beliefs that defendant contends are "beyond the reach of the legislature." Officers did not invade defendant's home during his on-line conversation with "Stacy" and arrest him based upon the contents of that conversation. Indeed, hundreds of similarly inappropriate exchanges undoubtedly take place every day on the Internet. Those discussions, although disturbing, are not illegal if not acted upon. Defendant, however, demonstrated his intent to commit the sexual acts by traveling to Illinois to meet "Stacy," whom he believed to be under the age of 17, at an arranged time and place.

*Ruppenthal,* 265 Ill.Dec. 43, 771 N.E.2d at 1005–06.

[¶ 29] The common thread in the cases involving First Amendment challenges to luring statutes is that freedom of speech does not extend to speech used as an integral part of conduct in violation of a valid criminal statute. In *Ashcroft,* 535 U.S. at 251–53, 122 S.Ct. 1389 the Court explicitly recognized that speech and conduct dichotomy in the context of a discussion about luring statutes. There, the government sought to justify the prohibitions on virtual child pornography because pedophiles could use virtual child pornography to seduce children. The Court rejected that argument, recognizing the government may enforce criminal penalties for unlawful solicitation and the solicitation of minors depends on the actor's unlawful conduct, which is defined as a crime apart

from any link to the speech in question. *Id.* at 252–53, 122 S.Ct. 1389. The Court also rejected the government's argument that virtual child pornography whets the appetites of pedophiles and encourages them to engage in illegal conduct, concluding that case did not involve solicitation and the government had shown no more than a remote connection between the speech and any resulting child abuse. *Id.* at 253–54, 122 S.Ct. 1389.

[¶ 30] Here, we have construed N.D.C.C. § 12.1–20–05.1 to mean an adult is guilty of luring a minor by computer when (1) the adult knows the character and content of a communication that explicitly or implicitly discusses or depicts actual or simulated nudity, sexual acts, sexual contact, sadomasochistic abuse, or other sexual performances, (2) the adult willfully uses any computer communication system to initiate or engage in such communication with a person the adult believes to be a minor, and (3) by means of that communication, the adult willfully importunes, invites, or induces the person the adult believes to be a minor to engage in sexual acts or have sexual contact with the adult, or to engage in a sexual performance, obscene sexual performance, or sexual conduct for the adult's benefit, satisfaction, lust, passions, or sexual desires. Section 12.1–20–05.1, N.D.C.C., is geared toward an adult's willful solicitation of sexual acts or sexual contact with a person believed to be a minor, and North Dakota law separately prohibits sexual contact or sexual acts with a minor. *See e.g.,* N.D.C.C. §§ 12.1–20–03; 12.1–20–04; 12.1–20–05; and 12.1–20–07. Merely because Backlund's communications were transmitted to an adult does not negate his belief he was communicating with a minor, which is an aspect of the culpability defined by the statute. *See Ruppenthal,* 265 Ill.Dec. 43, 771 N.E.2d at 1005. Moreover, the statute affects only those who willfully target a person believed to be a minor; it

does not punish those who inadvertently speak with minors, or who post messages for all Internet users, either adult or minors, to seek out and read at their discretion. *See Bailey,* 228 F.3d at 639; *Foley,* 709 N.Y.S.2d 467, 731 N.E.2d at 129–30.

[¶ 31] Backlund attempts to distinguish *Foley* by relying on differences between the New York statute and N.D.C.C. § 12.1–20–05.1. Backlund argues N.D.C.C. § 12.1–20–05.1 "does not simply prohibit 'depictions' of certain sexual activity, but rather prohibits 'implicit or explicit discussions'" of sexual activity, and that distinction implicates pure speech. Backlund argues N.D.C.C. § 12.1–20–05.1 "allows a charge to be filed based upon 'pure' speech, merely a 'discussion' of sexual activity, as opposed to the New York statute's requirement that a depiction, or picture, be forwarded in connection with the communications."

[¶ 32] Section 12.1–20–05.1, N.D.C.C. is not identical to the New York statute in *Foley.* Contrary to Backlund's assertion, however, N.D.C.C. § 12.1–20–05.1, as we have construed it, proscribes the willful solicitation of a person believed to be a minor to engage in a sexual act or sexual contact and does not authorize a criminal charge to be filed based upon "pure" speech. Rather, N.D.C.C. § 12.1–20–05.1, like the statutes at issue in *Foley, Ruppenthal, Powell,* and *Bailey,* is premised on criminalizing "luring" conduct and is "a preemptive strike against sexual abuse of children by creating criminal liability for *conduct* directed toward the ultimate acts of abuse." *Foley,* 709 N.Y.S.2d 467, 731 N.E.2d at 129 (emphasis added). We conclude N.D.C.C. § 12.1–20–05.1 does not violate the free speech provisions of the state and federal constitutions.

V

[¶ 33] Relying on the dissent in *State v. Burr,* 1999 ND 143, 598 N.W.2d 147, Back-

lund argues the combined effects of the "registration" and "notification" provisions of the 2001 version of N.D.C.C. § 12.1–32–15 are punitive and violate the due process and double jeopardy provisions of the federal and state constitutions.

[¶ 34] Under N.D.C.C. § 12.1–32–15(2)(a), a court shall require an individual to register with the appropriate law enforcement entity if the individual "[h]as pled guilty ... to, or been found guilty as a felonious sexual offender." As relevant to this case, a person who has pled guilty to a violation of N.D.C.C. § 12.1–20–05.1 is a "sexual offender" under N.D.C.C. § 12.1–32–15(1)(e). Other provisions authorize the court to deviate from requiring an individual to register in certain circumstances. *See* N.D.C.C. § 12.1–32–15(2)(b), (c), and (d). Backlund pled guilty to a felony charge of violating N.D.C.C. § 12.1–20–05.1, and he is subject to mandatory registration for ten years under N.D.C.C. § 12.1–32–15(2)(a) and (8)(a). Under N.D.C.C. § 12.1–32–15(12) the attorney general shall develop guidelines for the risk assessment of sexual offenders who are required to register, with either a low-risk, moderate-risk, or high-risk assigned to each offender. Under N.D.C.C. § 12.1–32–15(13), law enforcement agencies must disclose registration information to the public if the individual is assessed as moderate-risk or high-risk and the agency determines that disclosure of the conviction and registration information is necessary for public protection. However, upon request law enforcement agencies may release conviction and registration information regarding low-risk, moderate-risk, or high-risk offenders. N.D.C.C. § 12.1–32–15(13).

A

[¶ 35] In *Burr*, 1999 ND 143, ¶ 8, 598 N.W.2d 147, the issue was whether an earlier version of N.D.C.C. § 12.1–32–15, which was enacted after Burr's criminal conviction for sexual imposition and required him to register as a sexual offender, was unconstitutional as ex post facto punishment. *See Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (holding Alaska's registration scheme was not punitive and did not violate ex post facto clause). The 2001 version of N.D.C.C. § 12.1–32–15 was effective when Backlund violated N.D.C.C. § 12.1–20–05.1, and he has no ex post facto argument. Backlund instead argues the 2001 version of N.D.C.C. § 12.1–32–15 "fails to provide [him] due process of law in the form of a meaningful opportunity to demonstrate he is neither dangerous nor likely to re-offend and, therefore, should be exempted from registration altogether."

[¶ 36] Backlund is subject to mandatory registration under N.D.C.C. § 12.1–32–15(1)(e) and (2)(a), and his criminal conviction effectively provided him with procedural due process. *See Connecticut Dep't. of Pub. Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160, 1164–65, 155 L.Ed.2d 98 (2003). In *Doe*, at 1164–65, however, the Court did not decide whether Connecticut's registration requirements violated substantive due process, and Backlund claims the registration and notification requirements of N.D.C.C. § 12.1–32–15 violate substantive due process principles.

[¶ 37] Although Backlund raised a procedural due process argument in the trial court, he did not marshal a separate substantive due process argument in that court. Other than conclusory claims that North Dakota's statutory scheme violates his substantive due process rights, Backlund has not developed a substantive due process challenge to N.D.C.C. § 12.1–32–15 in this Court. *See, e.g., Reno v. Flores,*

507 U.S. 292, 301–06, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (stating due process includes substantive component, which forbids government from infringing certain fundamental liberty interests no matter what process is involved, unless the infringement is narrowly tailored to serve a compelling state interest); *Michael H. v. Gerald D.,* 491 U.S. 110, 122–23, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (stating, for substantive due process analysis, fundamental interest must be so rooted in the traditions and conscience of our people as to be ranked as fundamental); *Hoff v. Berg,* 1999 ND 115, ¶ 14, 595 N.W.2d 285 (stating this Court may declare statute unconstitutional on substantive due process grounds if " 'the Legislature had no power to act in the particular matter, or having power to act, [] such power was exercised in an arbitrary, unreasonable, or discriminatory manner and [] the method adopted has no reasonable relation to attaining the desired result.' " (quoting *Fargo v. Stensland,* 492 N.W.2d 591, 594 (N.D. 1992)).

[¶ 38]  We have said a party raising a constitutional challenge "should bring up the heavy artillery or forego the attack entirely." *State v. Norman,* 2003 ND 66, ¶ 21, 660 N.W.2d 549 (quoting *State v. Clark,* 2001 ND 194, ¶ 9, 636 N.W.2d 660). We have also said we "will only decide issues that have been thoroughly briefed and argued." *Norman,* at ¶ 22 (quoting *Olander Contracting Co. v. Gail Wachter Invs.,* 2002 ND 65, ¶ 32, 643 N.W.2d 29. We therefore do not address the merits of Backlund's argument that the registration and notification provisions of N.D.C.C. § 12.1–32–15 violate his substantive due process rights.

### B

[¶ 39]  Backlund also argues the cumulative effect of the registration and notification requirements are punitive and violate double jeopardy.

[¶ 40]  The double jeopardy clause, found in the Fifth Amendment of the United States Constitution, protects against successive prosecutions and punishments for the same criminal offense. *State v. Kelly,* 2001 ND 135, ¶ 11, 631 N.W.2d 167. Article 1, § 12, of the North Dakota Constitution also protects against double jeopardy. The double jeopardy clause protects against three types of violations: prosecuting a defendant again for the same conduct following an acquittal; prosecuting a defendant for the same crime after conviction; and subjecting a defendant to multiple criminal punishments for the same conduct. *Kelly,* at ¶ 11. For purposes of double jeopardy analysis under the federal and state constitutions, we apply the same standard to determine punishment. *Id.*

[¶ 41]  Relying on the dissent in *Burr,* 1999 ND 143, 598 N.W.2d 147, Backlund argues the cumulative effect of the registration and dissemination requirements of N.D.C.C. § 12.1–32–15 is punitive. However, *Burr,* at ¶ 8, involved an ex post facto challenge to a prior version of N.D.C.C. § 12.1–32–15 and not a double jeopardy analysis. In the context of that ex post facto challenge, both the majority and the dissent considered whether the effect of a subsequent requirement to register as a sex offender imposed additional punishment on a defendant who had been convicted of a crime before enactment of the registration requirement. *See Burr,* at ¶¶ 10, 42. The majority concluded the registration requirement was regulatory and was not an additional punishment, and did not violate the ex post facto clause. *Burr,* at ¶ 36. The dissent concluded the statute imposed an additional punishment on the defendant which was not authorized when the defendant committed the crime. *Burr,* at ¶ 98 (Kaspner, J., dissenting). However, the dissent recognized "[t]he fact that

§ 12.1–32–15 serves to punish sexual offenders is a matter of legislative policy and a good policy too, in my opinion, as to persons who come within its scope after its enactment." *Id.*

[¶ 42] Backlund was ordered to register as a sexual offender and subject to the notification requirements in the context of an original criminal sentence for violating N.D.C.C. § 12.1–20–05.1. The registration requirement was part and parcel of the conviction for the singular offense of luring a minor by computer and was not a separate proceeding. *See State v. Kelly*, 2001 ND 135, ¶ 10, 631 N.W.2d 167. Those conditions are part of the sentencing scheme for his violation of N.D.C.C. § 12.1–20–05.1, and although the ramifications for those conditions may be harsh, it is within the legislative prerogative to impose the condition. *See State v. Brandon*, 413 N.W.2d 340, 341 (N.D.1987) (recognizing Legislature, in exercise of police power, may define acts that constitute criminal offenses and set sentencing guidelines for violations of criminal statutes); 21 Am.Jur 2d, *Criminal Law* § 12 (1998) (recognizing Legislature's prerogative to define crimes and prescribe punishments). *See also* N.D.C.C. § 12.1–32–01 (generally authorizing penalties of imprisonment, a fine, or both for violations of criminal statutes). We hold the registration and notification provisions of N.D.C.C. § 12.1–32–15 do not violate the double jeopardy provisions of the state and federal constitutions.

### VII

[¶ 43] We affirm Backlund's conviction.

[¶ 44] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.