2003 ND 32

**D.D.I., INC., Danov Corporation, and Estuary Corporation, Florida corporations, Plaintiffs and Appellees,**

v.

**STATE of North Dakota, by and through its Tax Commissioner, Rick CLAYBURGH, Defendant and Appellant.**

No. 20020241.

Supreme Court of North Dakota.

March 5, 2003.

William P. Pearce (appeared), Pearce & Durick, Bismarck, ND, Richard A. Husseini (argued), Geoffrey Schultz (appeared), James Edward Maloney (on brief), Maryanne Lyons (on brief), Baker Botts L.L.P., Gerard Desrochers (on brief), Houston, TX, for plaintiffs and appellees.

Donnita A. Wald (argued), Special Assistant Attorney General and Robert W. Wirtz (appeared), Special Assistant Attorney General, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] The State of North Dakota, by and through its Tax Commissioner ("Commissioner"), appealed from a judgment declaring the dividends received deduction in N.D.C.C. § 57–38–01.3(1)(g) unconstitutional and enjoining collection of the Commissioner's assessments of corporate income tax against D.D.I., Inc., Danov Corporation, and Estuary Corporation (collectively referred to as "taxpayers").[1] We hold the dividends received deduction is not a valid compensatory tax and violates the Commerce Clause. We affirm.

I

[¶ 2] The taxpayers are Florida corporations engaged in managing assets, including oil and gas properties in North Dakota, and they pay North Dakota corporate income taxes on their net income from business done by them in North Dakota. The taxpayers also receive dividend income from other corporations conducting business either wholly or primarily outside of North Dakota. D.D.I. and Estuary initially excluded the dividends received from those other corporations in the calculation of their North Dakota corporate income tax for tax years 1989 through 1997, and Danov excluded those dividends for tax years 1989 through 1995. The Commissioner determined those dividends were business income subject to apportionment, and to the extent the Commissioner determined the dividends were includable in the taxpayers' North Dakota apportioned income, the Commissioner applied the dividends received deduction under N.D.C.C. § 57–38–01.3(1)(g), which authorizes adjustments to a corporation's taxable income and provides:

---

1. The Commissioner has not separately raised or argued the appropriateness of the injunctive relief granted by the district court. We, therefore, do not address the issue.

1. The taxable income of a corporation as computed pursuant to the provisions of the Internal Revenue Code of 1954, as amended, must be:

. . . .

g. Reduced by dividends or income received by any person from stock or interest in any corporation, the income of which has been assessed and paid by a corporation under this chapter or sections 57–35.3–01 through 57–35.3–12, received by the taxpayer and included in the gross income within the income year if such corporation has reported the name and address of each person owning stock and the amount of dividends or income paid each such person during the year, but when only part of the income of any corporation has been assessed and income tax paid under this chapter or sections 57–35.3–01 through 57–35.3–12, only a corresponding part of the dividends or income received therefrom may be deducted.

[¶ 3] The taxpayers brought this declaratory judgment action against the Commissioner, claiming the dividends received deduction violated the Commerce Clause. The trial court concluded the dividends received deduction violated the "negative" or "dormant" aspect of the Commerce Clause because the deduction was similar to a North Carolina "intangibles tax" held unconstitutional in *Fulton Corp. v. Faulkner*, 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996). The Commissioner appealed.

## II

[¶ 4] The Commerce Clause, U.S. Const. art. I, § 8, cl. 3, grants Congress the power "[t]o regulate commerce ... among the several States." Although the Commerce Clause is phrased as a grant of power to Congress, it has long been understood to have a "negative" or "dormant" aspect that denies states the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce. *Fulton*, 516 U.S. at 330, 116 S.Ct. 848; *Oregon Waste Sys., Inc. v. Department of Envtl. Quality*, 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). The Commerce Clause grants Congress plenary authority over interstate commerce to avoid the economic balkanization that had plagued relations among the colonies and later among the states under the Articles of Confederation. *Oregon Waste*, at 98, 114 S.Ct. 1345. The "negative" or "dormant" aspect of the Commerce Clause prohibits economic protectionism designed to benefit in-state economic interests by burdening out-of-state competitors. *Fulton*, at 330, 116 S.Ct. 848.

[¶ 5] In *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 288–89, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the United States Supreme Court rejected a formalistic approach to Commerce Clause challenges to state taxes. *See generally* 1 Jerome R. Hellerstein and Walter Hellerstein, *State Taxation* ¶ 4.11[1] (3rd ed.2001). The Court recognized that entities engaged in interstate commerce were not immune from state taxation and said " ' "[i]t was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing business." *Western Live Stock v. Bureau of Revenue*, 303 U.S. 250, 254, 58 S.Ct. 546, 82 L.Ed. 823 (1938).' " *Complete Auto*, at 288, 97 S.Ct. 1076 (quoting *Colonial Pipeline Co. v. Traigle*, 421 U.S. 100, 108, 95 S.Ct. 1538, 44 L.Ed.2d 1 (1975)). The Court articulated a four-part test under which a state tax would be sustained against a Commerce Clause challenge if (1) the tax was applied to an activity with a

substantial nexus with the taxing state, (2) the tax was fairly apportioned, (3) the tax did not discriminate against interstate commerce, and (4) the tax was fairly related to the services provided by the state. *Complete Auto,* at 279, 287, 97 S.Ct. 1076.

■ [¶ 6] Here, the dispositive issue under that four-part test is whether the dividends received deduction discriminates against interstate commerce. In *Oregon Waste,* 511 U.S. at 99, 114 S.Ct. 1345, the Court defined "discrimination" to mean "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *See also Fulton,* 516 U.S. at 331, 116 S.Ct. 848 (quoting *Chemical Waste Mgmt., Inc. v. Hunt,* 504 U.S. 334, 342, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992) for principle that statute is discriminatory if it "tax[es] a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State"). State laws that facially discriminate against interstate commerce are subject to the "strictest scrutiny" and are "virtually *per se* invalid." *Fulton,* at 331, 344, 116 S.Ct. 848; *Oregon Waste,* at 99–101, 114 S.Ct. 1345.

■ [¶ 7] The Commissioner concedes the dividends received deduction facially discriminates against interstate commerce. A facially discriminatory tax may survive Commerce Clause scrutiny if the tax is a "compensatory" or "complementary" tax that requires interstate commerce bear a burden already born by intrastate commerce. *Fulton,* 516 U.S. at 331–33, 116 S.Ct. 848. The compensatory or complementary tax doctrine assures that " '[w]hen the account is made up, the stranger from afar is subject to no greater burdens as a consequence of ownership than the dweller within the gates. The one pays upon one activity or incident, and the other upon another, but the sum is the same when the reckoning is closed.' " *Ful-*

*ton,* at 332, 116 S.Ct. 848 (quoting *Henneford v. Silas Mason Co.,* 300 U.S. 577, 584, 57 S.Ct. 524, 81 L.Ed. 814 (1937)). In *Fulton,* at 332–33, 116 S.Ct. 848, the Court enunciated three requirements for a valid compensatory tax:

First, "a State must, as a threshold matter, 'identif[y] ... the [intrastate tax] burden for which the State is attempting to compensate.' " *Oregon Waste, supra,* at 103[, 114 S.Ct. 1345] (quoting *Maryland v. Louisiana,* 451 U.S. 725, 758[, 101 S.Ct. 2114, 68 L.Ed.2d 576] (1981)). Second, "the tax on interstate commerce must be shown roughly to approximate—but not exceed—the amount of the tax on intrastate commerce." *Oregon Waste,* 511 U.S. at 103[, 114 S.Ct. 1345]. "Finally, the events on which the interstate and intrastate taxes are imposed must be 'substantially equivalent'; that is, they must be sufficiently similar in substance to serve as mutually exclusive 'prox[ies]' for each other." *Ibid.* (quoting *Armco Inc. v. Hardesty, supra,* at 643[, 104 S.Ct. 2620]).

■ [¶ 8] The Commissioner argues the dividends received deduction must be presumed constitutional because statutes enjoy a strong presumption of constitutionality in North Dakota, *see MCI Telecomms. v. Heitkamp,* 523 N.W.2d 548, 552 (N.D.1994), and the taxpayers have failed to prove beyond a reasonable doubt the dividends received deduction is unconstitutional. Although there is a presumption that statutes are constitutional, facially discriminatory restrictions on interstate commerce are subject to the strictest scrutiny and are virtually per se invalid, and the State must establish the requirements for a valid compensatory tax. *Fulton,* 516 U.S. at 332, 344, 116 S.Ct. 848; *Oregon Waste,* 511 U.S. at 99–101, 114 S.Ct. 1345.

[¶ 9] The Commissioner argues the dividends received deduction is a valid

compensatory tax. The Commissioner argues the "intangibles tax" found unconstitutional in *Fulton* and the dividends received deduction in this case are not similar. We reject the Commissioner's arguments.

[¶ 10] In *Fulton*, 516 U.S. at 328, 116 S.Ct. 848, the Supreme Court described North Carolina's "intangibles tax" on the fair market value of corporate stock owned by North Carolina residents:

> [A] corporation doing all of its business within the State would pay corporate income tax on 100% of its income, and the taxable percentage deduction allowed to resident owners of that corporation's stock under the intangibles tax would likewise be 100%. Stock in a corporation doing no business in North Carolina, on the other hand, would be taxable on 100% of its value. For the intermediate cases, holders of stock were able to look up the taxable percentage for a large number of corporations as determined and published annually by the North Carolina Secretary of Revenue (Secretary). In 1990, for example, the Secretary determined the appropriate taxable percentage of IBM stock to be 95%, meaning that IBM did 5% of its business in North Carolina, with its stock held by North Carolina residents being taxable on 95% of its value.

[¶ 11] In *Fulton*, 516 U.S. at 334–36, 116 S.Ct. 848, North Carolina argued the "intangibles tax," with its taxable percentage deduction, compensated for the burden of the general corporate income tax paid by corporations doing business in North Carolina. Because North Carolina had no general sovereign interest in taxing income earned out of state, however, North Carolina was required to identify some instate activity or benefit to justify the compensatory levy. *Id.* at 334, 116 S.Ct. 848. The Supreme Court rejected North Car-

olina's argument that it could impose a compensatory tax on foreign corporations because they availed themselves of North Carolina's capital markets. *Id.* at 335–36, 116 S.Ct. 848. The Court said " '[p]ermitting discriminatory taxes on interstate commerce to compensate for charges purportedly included in general forms of intrastate taxation would allow a state to tax interstate commerce more heavily than instate commerce anytime the entities involved in interstate commerce happened to use facilities supported by general tax funds.' " *Id.* at 335, 116 S.Ct. 848 (quoting *Oregon Waste*, 511 U.S. at 105 n. 8, 114 S.Ct. 1345). North Carolina failed to show the corporate income tax supported the maintenance of the capital market; it therefore failed to justify the use of the intangibles tax as replacement support for the market. *Fulton*, at 336, 116 S.Ct. 848.

[¶ 12] The Supreme Court rejected North Carolina's claim that its intangibles tax was roughly approximate to, but did not exceed, the intrastate corporate income tax. *Fulton*, 516 U.S. at 336–38, 116 S.Ct. 848. The Court said the quantitative assessments necessary for the compensatory tax doctrine were difficult to apply to general forms of taxation:

> When a corporation doing business in a State pays its general corporate income tax, it pays for a wide range of things: construction and maintenance of a transportation network, institutions that educate the work force, local police and fire protection, and so on. The Secretary's justification for the intangibles tax, however, rests on only one of the many services funded by the corporate income tax, the maintenance of a capital market for the shares of both foreign and domestic corporations. To the extent that corporations do their business outside North Carolina, after all, they get little else from the State. Even, then, if we

suppressed our suspicion that North Carolina actually funds its capital market through its blue sky fees, not its general corporate taxation, the relevant comparison for our analysis has to be between the size of the intangibles tax and that of the corporate income taxes component that purportedly funds the capital market.

*Id.* at 337–38, 116 S.Ct. 848.

[¶ 13] The Supreme Court also rejected North Carolina's claim that its intangibles tax and its general corporate income tax fell on substantially equivalent events. *Fulton,* 516 U.S. at 338–44, 116 S.Ct. 848. The Court said it had found that equivalence only in the sales/use tax combination at issue in *Silas Mason,* but recent cases had demonstrated an extreme reluctance to recognize new compensatory categories. *Fulton,* at 338, 116 S.Ct. 848. The Court said the intangibles tax and general corporate income tax were different in a number of respects, including the parties ostensibly taxed, and those taxes did not satisfy the objective of the equivalent-event requirement to enable in-state and out-of-state businesses to compete on an equal footing. *Id.* at 340, 116 S.Ct. 848.

[¶ 14] Here, N.D.C.C. § 57–38–01.3(1)(g) authorizes a dividends received deduction to a dividend recipient to the extent the dividend payor's income was subject to North Dakota corporate income tax, but does not grant a dividends received deduction to a dividend recipient if the dividend payor's income was not subject to North Dakota corporate income tax. The Commissioner argues the intrastate tax burden for which the dividends received deduction attempts to compensate is the North Dakota corporate income tax paid by a North Dakota corporation that distributes the already taxed corporate profits as a dividend. The Commissioner argues the dividends received deduction compensates for the tax already paid on North Dakota income by the North Dakota corporation paying that dividend. The Commissioner argues "[o]nly one level of North Dakota income tax should be imposed on North Dakota income. The [dividends received deduction] insures that, in the end, there is only one level of North Dakota income tax on North Dakota income. Interstate commerce, i.e., the dividend from [an out-of-state corporation] to [taxpayers] bears the same burden ... already borne by intrastate commerce, i.e., the dividend from [a North Dakota corporation] to [taxpayers]." The Commissioner offers the following comparative tax hypothetical, with a ten percent tax rate on North Dakota corporate income and on dividends:

| | North Dakota Corporation | Out–of–State Corporation |
| --- | --- | --- |
| Dividend Received by Taxpayers | $100 | $100 |
| North Dakota Corporate Income Tax on Profits out of which Dividend is Paid | $ 10 | $ 0 |
| Dividends Received Deduction | $100 | $ 0 |
| Taxable Dividend | $ 0 | 100 |
| North Dakota Corporate Income Tax on Receipt of Dividend | $ 0 | $ 10 |
| Total North Dakota Tax Paid By Dividend Payor Corporation and by Taxpayers | $ 10 | $ 10 |

[¶ 15] Although avoiding double taxation of North Dakota income is a permissible goal, the Commissioner has not identified any specific in-state activity or benefit received by the taxpayers to justify the compensatory levy on their dividends received from out-of-state corporations. The State of North Dakota does not have a general sovereign interest in taxing income earned out-of-state and must identify some specific in-state activity or benefit to justify a compensatory levy. *Fulton*, 516 U.S. at 334, 116 S.Ct. 848. The Commissioner has failed to establish such an in-state benefit to the taxpayers.

[¶ 16] The Commissioner's comparative tax hypothetical ignores the corporate income tax that an out-of-state corporation's state might impose on the out-of-state corporation's profits, which effectively imposes a double layer of tax on the out-of-state income but not on the in-state income. The risk of multiple taxation may be considered in assessing a Commerce Clause claim, *see Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 444, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); 1 Hellerstein and Hellerstein, ¶ 4.08[1][a], and in considering whether a tax is discriminatory, the United States Supreme Court has applied the "internal consistency" doctrine. *Armco Inc. v. Hardesty*, 467 U.S. 638, 644, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984). *See American Trucking Ass'ns, Inc. v. Scheiner*, 483 U.S. 266, 283, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987); *Tyler Pipe Indust. Inc. v. Washington State Dep't of Rev.*, 483 U.S. 232, 241, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987). *See generally* 1 Hellerstein and Hellerstein, ¶ 4.15[1]. The internal consistency doctrine requires that the imposition of a tax identical to a challenged tax in every state would add no burden to interstate commerce that intrastate commerce did not also bear, and looks at the structure of the challenged tax to see whether its identical application by every state would place interstate commerce at a disadvantage against intrastate commerce. *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 185, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995). The internal consistency test does not require other states to actually impose a similar tax to place a burden on interstate commerce; rather, a tax that exposes a taxpayer to a risk of multiple taxation is invalid under the Commerce Clause. *See Scheiner*, at 285, 107 S.Ct. 2829; *Tyler Pipe*, at 241, 107 S.Ct. 2810; *Armco*, at 644–45, 104 S.Ct. 2620. *See also* 1 Hellerstein and Hellerstein, at ¶ 4.15[1][a].

[¶ 17] Here, when the effect of the corporate income tax that an out-of-state corporation's state might impose on the out-of-state corporation's profits is considered, the dividends received deduction does not avoid double taxation for out-of-state corporate income and does not roughly approximate the tax on intrastate commerce under the Commissioner's comparative tax hypothetical. We conclude the dividends received deduction does not satisfy the first two elements of the compensatory tax doctrine, and we need not address whether the interstate and intrastate taxes are imposed on substantially equivalent events. *See Fulton*, 516 U.S. at 340, 116 S.Ct. 848 (stating general corporate income tax and intangibles tax are different in a number of obvious aspects, including the parties ostensibly taxed). We conclude the dividends received deduction is not a valid compensatory tax.

III

[¶ 18] Relying on *Oregon Waste*, 511 U.S. at 100–01, 114 S.Ct. 1345 and *New Energy Co. v. Limbach*, 486 U.S. 269, 278,

108 S.Ct. 1803, 100 L.Ed.2d 302 (1988), the Commissioner nevertheless argues the dividends received deduction is valid because it serves a legitimate local purpose of preventing double taxation which cannot be served by reasonable nondiscriminatory alternatives.

 [¶ 19] However, *Oregon Waste* does not apply an alternative commerce clause test for compensatory tax cases. In *Oregon Waste*, 511 U.S. at 100–01, 114 S.Ct. 1345 (quoting *Limbach*, 486 U.S. at 278, 108 S.Ct. 1803), the Court said if a state regulation discriminates against interstate commerce, the regulation is analyzed under the "virtually *per se* rule of invalidity," and the regulation must be invalidated unless the State can " 'sho[w] that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.' " The Court said justifications for discriminatory restrictions on commerce must pass the "strictest scrutiny", the State's burden of justification is so heavy that facial discrimination by itself may be a fatal defect, and the compensatory tax doctrine "is merely a specific way of justifying a facially discriminatory tax as achieving a legitimate local purpose that cannot be achieved through nondiscriminatory means." *Oregon Waste*, 511 U.S. at 100–02, 114 S.Ct. 1345. Under *Oregon Waste*, the compensatory tax doctrine was the test applied for analyzing justification of a facially discriminatory tax. Moreover, although avoiding double taxation of North Dakota income is a legitimate legislative goal, "the purpose of, or justification for, a law has no bearing on whether it is facially discriminatory." *Oregon Waste*, at 100, 114 S.Ct. 1345. We have concluded the method employed by the State of North Dakota impermissibly

discriminates against interstate commerce. Taxpayers have asserted and the Commissioner does not dispute there are nondiscriminatory means to accomplish the goal of avoiding double taxation on North Dakota corporate income.

IV

[¶ 20] We conclude the dividends received deduction is not a valid compensatory tax and impermissibly discriminates against interstate commerce; therefore, N.D.C.C. § 57–38–01.3(1)(g) violates the Commerce Clause of the United States Constitution and is invalid.[2] We affirm the district court judgment.

[¶ 21] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.

**2.** Having declared subsection (g) unconstitutional has no effect on the remainder of the statute. *See* N.D.C.C. § 1–02–20. *See also*

*Montana–Dakota Utils. Co. v. Johanneson,* 153 N.W.2d 414, 424–25 (N.D.1967).